BRINK v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS — TORTS — ACTS IN GOVERNMENTAL CAPACITY.

Where a fire hydrant in a city is maintained solely as a part of the city's fire department, and no water has ever been sold from it, or used for any other purpose than the extinguishment of fires, the city is not liable in damages to one injured by his horse being frightened by the flushing of the hydrant by firemen for the sole purpose of removing obstructions that may have been placed in the hydrant and might interfere with its use in case of fire.

2. SAME—ACTION—EVIDENCE.

Evidence of the use of other hydrants for purposes other than the extinguishing of fires is immaterial and properly rejected.

3. HIGHWAYS AND STREETS—MUNICIPALITIES—STATUTORY LIABILITY—PERSONAL INJURIES.

A traveler injured on a street which is properly paved and in good repair, by reason of his horse being frightened by city firemen flushing one of the city's fire hydrants, cannot recover therefor against the city under the statute, on the theory that it did not keep the street in a condition reasonably safe for public travel.

Error to superior court of Grand Rapids; Newnham, J. Submitted February 23, 1906. (Docket No. 23.) Decided July 3, 1906.

Case by John A. Brink against the city of Grand Rapids for personal injuries. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

Two employés of the fire department of defendant city were engaged in flushing the hydrants of the city. They were just about to open a hydrant on a high part of Canal street in the city when the plaintiff drove along in a wagon drawn by one horse. One of the men tried to give him notice that they were about to open the hydrant, and evidently supposed he had done so. Plaintiff did not notice the men until he was within a short distance of them, though they were in plain sight, and had just flushed a hydrant which plaintiff had passed. When nearly opposite the hydrant the water flowed suddenly out upon the street, frightening his horse, which ran away, and plaintiff's leg was broken by a kick of the horse. Plaintiff brought suit, claiming (1) that defendant is liable under the statute for not keeping its streets in a condition reasonably safe for public travel, and (2) that the two firemen "were engaged chiefly, or at least partly, in performing a function which belonged to the city in its private or proprietary character." The court directed a verdict for the defendant, for the reason that the men operating the hydrant were performing a function wholly governmental in character.

*Jesse F. Orton,* for appellant.

*Moses Taggart* ( *Ganson Taggart,* of counsel ), for appellee.

GRANT, J. (*after stating the facts*).  1. The charter of the defendant city provides for a board of fire commissioners, which is entrusted with the entire control of the fire department. It also has a board of public works, which is authorized to cause its inhabitants to be supplied with water, to furnish the same at established rates, and to

construct all necessary works. Counsel do not disagree as to the law. The learned counsel for the plaintiff admits that the doctrine that—

"A municipality, in the absence of a statute to the contrary, is not responsible for injuries caused by the negligence of its employés engaged in so-called governmental functions, is too well established in this State to be questioned at the present time. * * *

"Without doubt, according to the weight of authority, a municipality is not responsible for negligent injuries to persons or property committed by members of a fire department when engaged in work pertaining exclusively to the extinguishment of fires."

Under this concession, which is undoubtedly the law, the citation of cases in this court or any other jurisdiction is unnecessary.

Counsel for both sides have shown great diligence in examining and citing cases, not so much for the purpose of stating the law as of finding facts similar to those in this case, and thus showing, the one that it is within, and the other that it is without, the rule. The question becomes one of fact. The court found, and so instructed the jury, that this hydrant had never been used for any other than fire purposes; that no water had ever been sold by the city or used by it for any other purpose than for the extinguishing of fires; that the sole object of opening and flushing this hydrant was for the purpose of removing sticks and stones which might have accumulated or been put there, so that in case of fire its use would not be obstructed. It was immaterial that these firemen opened and flushed other hydrants in the city for other purposes, such as purifying the water, or that they rendered that service for the city or board of public works at the same time that they were flushing the hydrants used exclusively for fire protection. It was also immaterial for what purpose other hydrants were used. All such testimony was therefore properly excluded. There was no evidence introduced showing

that this hydrant had been used for other purposes, and no testimony offered for that purpose was excluded.

The city had no pecuniary interest in establishing or maintaining this hydrant. It received no compensation for its use. It was maintained entirely by taxation upon the entire city, and its use was for the sole benefit of the city. It was constructed, maintained, and used in a governmental capacity. *Welsh* v. *Village of Rutland,* 56 Vt. 228; *Edgerly* v. *Concord,* 62 N. H. 8; *Fisher* v. *City of Boston,* 104 Mass. 87.

2. This action cannot be maintained under the statutory liability. The street was paved, was in good condition, and reasonably safe for travel. Its condition had nothing to do with the accident. The sole cause of the accident was the sudden flow of the water, which frightened the horse.

Judgment affirmed.

Montgomery and Hooker, JJ., concurred with Grant, J.

Ostrander, J. I concur in affirming the judgment upon the ground that the periodical inspection and flushing of hydrants, which was being conducted at the time the plaintiff was injured, was undertaken and supervised by the officers and agents of the fire department pursuant to the duty to see that the hydrants were in proper condition to be used in case of fire, in the performance of which duty they acted as independent public officers. I do not think the testimony shows—and, if it did, it would be entirely immaterial—that the city had no pecuniary interest in establishing and maintaining the particular hydrant, received no compensation for its use, and that it was constructed, maintained, and used in a governmental capacity. The water system of the city of Grand Rapids is a single system, constructed, owned, and operated by the city in its private, proprietary capacity. The testimony discloses, and it is matter of common knowledge, that such use may be made of the system, and of each hydrant

in the system, as convenience or necessity may require. It could not be well said that the same men, under the same direction, acting for the same purpose, were independent public officers when flushing one hydrant, and servants and agents of the city when flushing the hydrant next in line, because the city derived a revenue from one hydrant and none from the other. A certain control over the system, or over parts of it, for certain purposes, is given to the fire department of defendant city, as it is in most, if not all, cities owning a system of waterworks. The distinction between the uses of the system made by the servants and agents of the city and the uses made by the fire department, as well as the doctrine of the responsibility of the city for the proper erection and maintenance of a city water system as a whole, have been often stated by the courts. See cases cited by Mr. Justice GRANT, and also *Aldrich* v. *Tripp*, 11 R. I. 141; *Aschoff* v. *City of Evansville*, 34 Ind. App. 25; *City of Chicago* v. *Selz, Schwab & Co.*, 104 Ill. App. 376, 202 Ill. 545; *Esberg Cigar Co.* v. *City of Portland*, 34 Or. 282 (43 L. R. A. 435).

BLAIR, J., concurred with OSTRANDER, J.