H. P. LAWSON v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.
JOHN NICKELSON AND ANOTHER v. SAME DEFENDANT.[1]

May 18, 1928.

Nos. 26,635, 26,636.

**Defendant was not negligent in failing to provide gates or guards at railway crossing.**

1. Defendant was not negligent in failing to provide gates or other safeguards at the crossing, as it was not a crossing where they were required by law and was not extrahazardous.

**Defendant was not negligent in placing locomotive waiting for its train at edge of street.**

2. Placing a locomotive on a track leading from the roundhouse with its front at the edge of the street was not actionable negligence, although it obstructed the view of the main track to some extent.

**Probative value of testimony pro and con as to hearing whistle or train bell.**

3. As against the testimony of witnesses that they heard the whistle and bell of the train, the testimony of witnesses that they did not hear them is of no probative value unless it appears that the circumstances were such that they could and in the ordinary course of events would have heard them if sounded.

**Evidence will not justify finding of failure on part of trainmen.**

4. The evidence will not justify a finding that the train failed to blow the whistle or ring the bell.

Evidence, 23 C. J. p. 44 n. 88.
Railroads, 33 Cyc. p. 934 n. 17; p. 945 n. 69; p. 1091 n. 55.

———

See 22 R. C. L. 1006; 5 R. C. L. Supp. 1220; 6 R. C. L. Supp. 1346.
See 22 R. C. L. 995; 7 R. C. L. Supp. 760.

Two actions in the district court for St. Louis county, tried together, one by H. P. Lawson as administrator of the estate of Hans E. Nickelson to recover for his death, and the other by the administrator and a brother of the decedent to recover damages to a

———

[1]Reported in 219 N. W. 554.

truck owned by the brothers. There was a verdict in each case for the defendant. From orders, Grannis, J. denying their motions for a new trial, the plaintiffs appealed. Affirmed.

*Leonard McHugh,* for appellants.

*John E. Palmer* and *Fryberger, Fulton & Boyle,* for respondent.

TAYLOR, C.

On the morning of June 29, 1927, one of defendant's passenger trains going west collided with a truck driven by Hans E. Nickelson at a grade crossing on Twenty-first avenue west in the city of Duluth, Minnesota. Nickelson was killed, and Edward Paquette, riding with him, was injured. One action was brought to recover for the death, and another to recover for the damages to the truck. They were tried together and resulted in verdicts for defendant. Motions for new trials were made and denied, and the plaintiffs appealed.

The Whitney Materials Company has a plant for washing sand and gravel located on Lake Superior at the foot or south end of Twenty-first avenue west. Nickelson was hauling sand and gravel for the Whitney company from this plant, and at the time of the accident was on his way to the plant. Twenty-first avenue west extends north from this plant and intersects Michigan street at a right angle. Defendant's roundhouse is located on the southeast corner of this intersection, and two railroad tracks cross Twenty-first avenue south of the roundhouse. The south track is the main track, the other leads from the roundhouse to a switch which connects it with the main track a short distance west of Twenty-first avenue. No streets intersect Twenty-first avenue south of defendant's tracks, and the only buildings are a warehouse and the Whitney plant.

The court submitted to the jury two claims of negligence: (1) Failure of the train to give warning of its approach by blowing the whistle and ringing the bell; and (2) placing a locomotive on the north track where it obstructed the view of the south track. Plaintiffs also claim that defendant was negligent in failing to maintain gates or a watchman or other warning device at this

crossing, and urge the refusal to submit this question to the jury as error.

Defendant insists that the legislature, by L. 1925, p. 424, c. 336, has committed to the railroad and warehouse commission the matter of determining the crossings at which conditions exist which require gates, watchmen or other safeguards for the protection of travelers; and that railroads are required to provide such safeguards only at crossings at which the commission has found that conditions exist requiring them. Whether the statute has the effect claimed for it we have no need to determine in this case, for the facts will not warrant a finding that under the common law rule additional safeguards were required at this crossing. The trains passing over it run at a moderate rate of speed. The street ended at the lake. The portion of it below the crossing did not connect with any other street and merely afforded access to a warehouse and the Whitney plant. There was but little travel over the crossing other than the trucks going to or from the Whitney plant. These vehicles passed over it many times each day, but the drivers were familiar with the situation. It is only where peculiar and unusual conditions render a crossing extrahazardous that a railroad company can be charged with negligence in failing to protect it by gates or other safeguards, unless the duty to provide such protection has been imposed by legislative authority. Hollister v. Hines, 150 Minn. 185, 184 N. W. 856, and the cases there cited; and see Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758. The evidence will not justify a finding that this crossing was of an extrahazardous character.

While the complaints charge that the train was negligently run at an excessive rate of speed, no attempt was made to establish that claim at the trial. No witness placed the rate of speed higher than 15 miles per hour.

Plaintiffs claim that defendant was negligent in placing a locomotive where it obstructed the view of the main track. The locomotive was standing upon the roundhouse track ready to go out. Its front was at or near the outer edge of the sidewalk, but it was not in the street and the track where it stood was on defendant's

own land. A locomotive was run out of the roundhouse and left at that place ready for the trainmen every morning. To some extent it obstructed the view of those approaching the crossing from the north and was an element to be taken into account when considering the question of contributory negligence; but defendant could not be held guilty of actionable negligence in placing it upon that track ready for the engineer.

The important question is whether the evidence will sustain a finding that the train failed to give the required warnings of its approach. The engineer and fireman state that the whistle was blown for the crossing and that a long blast was given when they saw the truck. Plaintiffs' witness Williams, a truck driver for the Whitney company, was walking south on the east side of the street on his way to the plant. He says that he heard the whistle as he stepped off the track; that a minute later, or maybe less, he heard it again; and that he turned to see why it was blown a second time and saw the truck on the track and the engine crossing the east sidewalk and then the collision. In all 12 witnesses in that vicinity testify that they heard the whistle for the crossing. The claim that the whistle was not blown rests upon the testimony of the witnesses Paquette, Johnson and Valby. Paquette was riding in the truck with Nickelson. Asked by plaintiff on direct examination if he heard any whistle, he answered, "She blew and struck at the same time." On cross-examination he was not sure whether the whistle blew, but said, "if he blowed, he blowed and struck at the same time." He also said that he did not hear the bell. There is nothing to indicate that he was listening for such signals, or had in mind that they might be given by approaching trains. He was evidently giving no attention to the matter of approaching trains on the main track for he did not see or hear the train until the moment of impact. Johnson was a truck driver who was at the Whitney plant waiting for a load. He heard the crash but had not heard the whistle. He says he was paying no attention to trains or to whistles or bells. Valby was the superintendent of the Whitney plant and was walking to the plant down Twenty-first avenue. He

was about eight blocks from the place of the accident at the time it happened. He says:

"I became conscious that a whistle blew, one reasonably long blast—I am not certain that there was any interval of space but if there was there was a very slight interval of space between the whistle and the crash."

He noticed only one blast but says he does not know whether it had previously blown for the crossing.

The positive testimony of a witness that he heard a whistle is evidence that the whistle was in fact blown, for it must have been blown or he could not have heard it. But the negative testimony of a witness that he did not hear a whistle is not necessarily evidence that it was not blown, for it may have been blown and not have been heard by him. As against the positive testimony of witnesses that they heard a whistle the negative testimony of witnesses that they did not hear it is of no probative value, unless it be shown that the circumstances were such that they could, and in the ordinary course of events would, have heard it if it had been sounded. To give such negative testimony probative force, it must appear not only that the witness was where he could have heard the whistle if it had been sounded, but also that he was giving such attention to the matter that he ought to have heard it, and ordinarily would have heard it, if it had been blown. Harris v. M. & St. L. Ry. Co. 33 Minn. 459, 23 N. W. 850; Lee v. C. St. P. M. & O. Ry. Co. 68 Minn. 49, 70 N. W. 857; Cotton v. W. & S. F. Ry. Co. 99 Minn. 366, 109 N. W. 835, 8 L.R.A.(N.S.) 643, 116 A. S. R. 422, 9 Ann. Cas. 935; Moore v. M. & St. L. R. Co. 123 Minn. 191, 142 N. W. 152, 143 N. W. 326; Lawler v. M. St. P. & S. S. M. Ry. Co. 129 Minn. 506, 152 N. W. 882; Hollister v. Hines, 150 Minn. 185, 184 N. W. 856; Perkins v. C. M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758.

The engine was equipped with an automatic bell-ringer. When the train left the depot, some distance east of the crossing, the engineer started the bell-ringer and the bell rang continuously until after the accident. The engineer stopped the train and went

back to the truck to see if anyone was hurt and then returned to the engine and stopped the bell. The positive testimony that it was ringing is opposed only by the statement of Paquette previously mentioned, that he had not heard it as they approached the crossing.

The witnesses who did not hear the warning signals made no attempt to show that the circumstances were such that in the ordinary course of events they would have heard them had they been given, and a finding that they were not given could not be sustained on the evidence in this record.

Plaintiffs rest their appeal mainly on the claim that the court gave an erroneous instruction in respect to contributory negligence on the part of Nickelson. But as the evidence will not sustain a finding of negligence on the part of defendant, it is not necessary to consider the question of contributory negligence nor the instructions in respect to it. It follows that the orders denying new trials must be and are affirmed.